# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KRISTEN CLIFTON, | ) |
| Plaintiff, | ) ) ) |
| -vs- | ) Case No. CIV-14-152-D ) |
| SHELTER MUTUAL INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Shelter Mutual Insurance Company's ("Shelter") Motion for Summary Judgment [Doc. No. 22], to which Plaintiff Kristen Clifton ("Clifton") has responded [Doc. No. 28]. The matter is fully briefed and at issue.

## BACKGROUND

Clifton was crossing a street on campus corner in Norman, Oklahoma, when she was struck by a vehicle and injured. Through her attorney, Clifton made inquiry of Shelter, her insurer, as to any uninsured or underinsured motorist (UM/UIM) coverage under the policy covering her car. Shelter has an internal software program called "E-Commerce" which it uses to determine what policies may apply to an insured's claim. The assigned claims handler examined the policy referenced by Clifton's attorney and determined no UM/UIM coverage was available, but did find the policy provided medical payment coverage up to $5,000. He did not, however, use

"E-Commerce" to determine what other coverage(s) may have been applicable. Shelter paid Clifton $5,000; in addition to this, she also received $25,000 from The Hartford Insurance Company – the insurer of the driver who hit her.

Clifton sued Shelter in state court for bad faith, breach of contract and fraud, alleging it tortiously failed to consider and advise her that coverage was available under other insurance policies held by Clifton's parents. Upon receiving notice of the other policies, Shelter agreed that UM/UIM coverage was available under three policies and tendered a check to Clifton for $50,000.[1] Shelter issued a separate check in the amount of $8,413.24 to go toward those medical expenses not covered by the initial $5,000 payment. Shelter also opted to forego its subrogation rights. In all, Clifton's recovery for the accident was $83,413.24.

At her deposition, Clifton testified the lawsuit was not her idea, but her father's. She did not know what she was looking to recover in the lawsuit or how she had been harmed. She did not participate in discovery and had not seen Shelter's interrogatories to her until the day of her deposition. She stated she received all the care she needed and had not suffered mental anguish, embarrassment or financial loss. She could not describe anything she believed Shelter had done wrong. Clifton

---

[1] Prior to filing suit, Clifton's attorney made a demand to Hartford for $50,000 to "settle all claims of personal injury."

also testified that any money she received from the present suit would be split between her and her father; the allocation would be determined by her father at a later date. Clifton's father, Ronald Clifton, confirmed his daughter's testimony that she had not experienced any mental anguish, embarrassment, or financial loss as a result of the claims process. Although he believed she was entitled to damages for future complications from the accident, he had no medical evidence to support this claim. Rather, his belief was based on "life experiences."

At Mr. Clifton's deposition, Clifton's attorney stated on the record that he would not pursue his breach of contract and fraud claims, stating "I'm only going forward on bad faith, and I'll stipulate to that."

Shelter acknowledges it erred in evaluating Clifton's claim but that such conduct does not constitute an actionable tort. It contends its subsequent reversal of judgment and payment should end the matter. Clifton responds that genuine issues of material fact exist over whether Shelter committed bad faith in its initial investigation of her claim and fraud in informing her that no coverage existed when, in fact, coverage was available under other policies.

## STANDARD OF DECISION

Summary judgment is appropriate if the moving party demonstrates there is "no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *Callahan v. Unified Gov't of Wyandotte County*, 806 F.3d 1022, 1027 (10th Cir. 2015). An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way," and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citations omitted).

The nature of the showing depends upon whether the movant bears the burden of proof at trial with respect to the particular claim at issue. If the non-moving party bears the burden of proof, the movant need not "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis in original); *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 n. 2 (10th Cir. 1992). Rather, the movant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of the non-movant's claim. *Adler*, 144 F.3d at 671; *Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014).

The nonmoving party may not rest upon the mere allegations or denials of its pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004). Unsupported

4

conclusory allegations do not create an issue of fact. *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007). However, even if the non-movant produces some evidence, summary judgment may be granted if that evidence is "not significantly probative." *Hornady*, 746 F.3d at 1001 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

The Court views the evidence and draws inferences in the light most favorable to the non-movant. *Callahan*, 806 F.3d at 1027. At the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter asserted, but to determine whether there is a genuine issue for trial. *Tolan v. Cotton*, __ U.S. __, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014).

## DISCUSSION

Because this case was removed from state court based on diversity jurisdiction, Oklahoma law applies to determine the substantive rights of the parties. *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1180 (10th Cir. 2005) ("A federal court sitting in diversity must apply state law as propounded by the forum's highest court.") (citing *Rancho Lobo, Ltd. v. Devargas*, 303 F.3d 1195, 1202 n. 2 (10th Cir. 2002)).

## I. FRAUD

"Actual fraud is the intentional misrepresentation or concealment of a material fact, with an intent to deceive, which substantially affects another person[.]" *Croslin v. Enerlex, Inc.*, 2013 OK 34, ¶ 12, 308 P.3d 1041, 1045; *Bowman v. Presley*, 2009 OK 48, ¶ 13, 212 P.3d 1210, 1218. All elements of fraud must be present, absence of any one is fatal to the plaintiff's claim. *McCain v. Combined Commc'n Corp. of Okla., Inc.*, 1998 OK 94, ¶ 11, 975 P.2d 865, 867. "Fraud is never presumed and each of its elements must be proved by clear and convincing evidence." *Bowman*, 212 P.3d at 1218 (citations omitted); *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 999 (10th Cir. 2008). The "clear and convincing" standard is "the highest standard of proof that the law imposes in civil cases." *Kupersteinn v. Hoffman-Laroche*, 457 F. Supp. 2d 467, 471 (S.D.N.Y. 2006); *see also Liberty Mut. Fire Ins. Co. v. J.T. Walker Indus., Inc.*, No. 2:08-2043, 2014 WL 6773517, at *3 (D.S.C. Dec. 2, 2014) (clear and convincing standard is "the highest burden of proof known to the civil law.").

Although fraud is generally a question of fact, *Croslin*, 308 P.3d at 1046, summary judgment is appropriate where, under the uncontroverted facts, a plaintiff fails to demonstrate the viability of her claim. *See, e.g., Alta Health Strategies, Inc. v. Kennedy*, 790 F. Supp. 1085, 1093 (D. Utah 1992) ("[A]llegations of fraud do not lend themselves readily to resolution by way of summary judgment. . . . Even so,

[s]ummary judgment is appropriate when conclusory allegations of fraud stand alone, unsupported by specific evidence pertinent to a claim of common law fraud.") (citations and internal quotation marks omitted).

On this issue, the Court finds Shelter's motion should be granted. Although counsel's stipulation that he was "only going forward on bad faith" should end the matter,[2] the Court nonetheless concludes summary judgment is appropriate because Clifton's evidence of fraud does not establish a triable issue in light of the "clear and convincing" evidence standard as required under Oklahoma law. The Court's function at the summary judgment stage is to determine, viewing the record *as a whole*, whether a rational trier of fact could find in Clifton's favor. This question cannot be answered by looking at her evidence in a piecemeal manner. The facts of this case, even viewed in the light most favorable to Clifton, do not reasonably give rise to a finding of fraud. Shelter informed Clifton that no coverage was available for the policy referenced in her attorney's letter, but failed to identify coverage under other policies. Once Shelter was placed on notice of additional policies, it rectified its mistake and paid Clifton the sum demanded by her attorney. At best, Shelter's conduct is akin to mere oversight or negligence; however, in the Court's view, such

---

[2]As noted, Clifton's counsel also stipulated to dismissal of her breach of contract claim; accordingly, such claim shall not be addressed in this order.

conduct does not constitute gross negligence, or otherwise constitute actionable fraud. Even considering the totality of Clifton's evidence, that evidence does not demonstrate an "intent to deceive" on Shelter's part and Clifton has made no serious attempt to show actual damages suffered as a consequence. Accordingly, summary judgment is granted to Shelter on Clifton's fraud claim.

## II. BAD FAITH

To establish a bad-faith claim, Clifton must show (1) she was an insured and Shelter was required to take reasonable actions in handling the claim, (2) Shelter's actions were unreasonable under the circumstances, (3) Shelter failed to deal fairly and act in good faith toward Clifton in its handling of her claim, and (4) Shelter's breach or violation of the duty of good faith and fair dealing was the direct cause of any damages. *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 25, 121 P.3d 1080, 1093; *Automax Hyundai South, L.L.C. v. Zurich American Ins. Co.*, 720 F.3d 798, 810 (10th Cir. 2013).

To constitute bad faith, the conduct complained of must be more than simple negligence, but may be less than the reckless conduct necessary to sanction a punitive damage award against said insurer. *Badillo*, 121 P.3d at 1094; *see also Bannister v. State Farm Mut. Auto Ins. Co.*, 695 F.3d 1117, 1128 n. 11 (10th Cir. 2012) ("[A] violation of the [Oklahoma Unfair Claims Settlement Practices Act] does not

8

necessarily establish bad faith. An insurer may carelessly fail to perform some duty required by the statute with such frequency to warrant administrative sanction, but that does not establish more than negligent conduct in any individual case.") (citation omitted). "The insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'" *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436-37 (10th Cir. 1993) (citing *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989)); *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 891 (10th Cir. 2006).

The mere allegation that an insurer breached the duty of good faith and fair dealing does not automatically entitle a plaintiff to a jury trial. *Oulds*, 6 F.3d at 1436. A jury question arises only where relevant, material facts are in dispute or the undisputed facts permit different conclusions as to the reasonableness and good faith of the insurer's conduct. *Id*. "On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious." *Id*. at 1436-37. "Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." *Id*. "To hold otherwise would

subject insurance companies to the risk of punitive damages whenever litigation arises from insurance claims." *Id.* at 1437 (quoting *Manis v. Hartford Fire Ins. Co.*, 1984 OK 25, 681 P.2d 760, 762).

Likewise, the Court finds summary judgment appropriate on the issue of bad faith. Under the facts of this particular case and as a matter of law, the Court concludes Shelter's conduct cannot be reasonably perceived as tortious. As with Clifton's allegations of fraud, the conduct complained of, at best, evidences negligence on Shelter's part, but this is not tantamount to bad faith. Recognizing a potential recovery for bad faith under the facts of this case would be inconsistent with the standards developed by the Oklahoma Supreme Court regarding the insured-insurer relationship and hold the insurer to a lower threshold of actionable conduct (mere negligence) than that required to be liable in tort. Accordingly, summary judgment is granted to Shelter on Clifton's bad faith claim.

Having found for Shelter on Clifton's fraud and bad faith claims, the Court finds her claim for punitive damages moot as a matter of law.

## CONCLUSION

For the reasons stated, Defendant Shelter Mutual Insurance Company's Motion for Summary Judgment [Doc. No. 22] is **GRANTED**. A judgment shall be entered accordingly.

**IT IS SO ORDERED** this 9th day of February, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE